FILED _____   RECEIVED _____
ENTERED _____   SERVED ON _____
COUNSEL/PARTIES OF RECORD

**AUG 2 2 2012**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| WAYNE PHILLIP HAACK,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY OF CARSON CITY, et. al.<br><br>  Defendants. | 3:11-cv-00353-RAM<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Before the court is defendant Jose Delfin's Motion to Dismiss. (Doc. # 38.)[1] Plaintiff Wayne Phillip Haack opposed (Doc. # 39) and Delfin replied (Doc. # 41).

## I. BACKGROUND

Plaintiff originally filed his Complaint in the First Judicial District Court for Carson City, and it was subsequently removed by Defendants. (*See* Pet. for Removal (Doc. # 1).) Defendants are Carson City, Scott Davis, and Jose Delfin. (*See* Pl.'s Compl. (Doc. # 2) at 2-3.)

Plaintiff alleges that he became employed as a probationary wood shop teacher at a school in Carson City, Nevada, on August 17, 2009. (Doc. # 2 ¶ 8.) He claims that it was his custom to carry a pocket utility knife in order to trim his students' wood shop projects. (*Id.*) On November 5, 2009, Plaintiff attended a meeting with his former supervisor and Associate Superintendent of the Carson City School District, Delfin, in an unsuccessful attempt to persuade Delfin to place Plaintiff higher on the school district's salary schedule. (*Id.* ¶¶ 9-10.) According to Plaintiff, after the meeting he turned to Delfin's administrative assistant, Lily

---

[1] Refers to court's docket number.

1   Reedy, took the closed utility knife from his pocket and said, "I was tempted to use it, but I

2   didn't." (*Id.* ¶ 11.) He asserts that Reedy became more concerned about the incident later, and

3   decided to report it to Delfin and the Superintendent of Schools, Richard Stokes, the following

4   day. (*Id.* ¶¶ 12-13.)

5        Plaintiff was summoned to a meeting with Delfin and others on November 17, 2009,

6   wherein the utility knife incident was raised. (Doc. # 2 ¶¶ 15-16.) When he was questioned

7   about the utility knife, Plaintiff confirmed that he carried it, and produced it to Delfin. (*Id.*)

8   Plaintiff was subsequently placed under arrest by defendant Deputy Sheriff Davis, who had

9   been in the next room, and was charged with a gross misdemeanor for violating Nevada

10  Revised Statute 392.915, intimidating an employee of a school district. (*Id.* ¶¶ 17-18.)

11       As to Delfin, Plaintiff asserts claims under 42 U.S.C. § 1983, including claims that his

12  Fourth Amendment rights were violated when he was arrested without probable cause, and

13  that Defendants conspired to violate his Fourth Amendment rights. (Doc. # 2 ¶¶ 19-27.) In

14  connection with the federal claims, he seeks to recover attorney's fees pursuant to 42 U.S.C. §

15  1988. (*Id.* ¶¶ 33-34.) Plaintiff also asserts state law claims for intentional infliction of

16  emotional distress and negligence against Delfin. (*Id.* ¶¶ 42-48.)

17       Delfin has filed a Motion to Dismiss, arguing: (1) Plaintiff's state law claims are barred

18  by Nevada's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute;

19  (2) Delfin has immunity for Plaintiff's federal and state law claims under the *Noerr-Pennington*

20  doctrine; and (3) Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure

21  12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. # 38.)

22                          **II.  LEGAL STANDARD**

23  **A.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

24       "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a

25  question of law." *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983)

26  (citation omitted). Under Federal Rule of Civil Procedure 8(a), "a claim for relief must

27  contain...a short and plain statement of the claim showing that the pleader is entitled to

28

relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 678. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id.* at 682.

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.2d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id.* at 679.

As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

3

## B. *Noerr-Pennington* Doctrine

With regard to Plaintiff's federal claims, Delfin has advanced the *Noerr-Pennington* doctrine. This doctrine immunizes acts derived from the First Amendment's guarantee of the right of the people to petition the government for a redress of grievances. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). The *Noerr-Pennington* doctrine protects "those who petition any department of the government" from statutory liability for such conduct. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (citing *Sosa v. DIRECTV, Inc.*, 437 U.S. 923, 929 (9th Cir. 2006)); *see also Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1065 (9th Cir. 2005) (citation omitted).

Although the *Noerr-Pennington* doctrine was formulated in the antitrust context, it now "appl[ies] with full force in other statutory contexts." *Kearney*, 590 F.3d at 644 (internal quotation marks and citations omitted). In the Ninth Circuit, *Noerr-Pennington* applies to section 1983 claims. *See id.* (citing *BE&K Constr. v. NLRB*, 536 U.S. 516, 525 (2002)); *see also Empress*, 419 F.3d at 1056 ("Noerr-Pennington immunity now applies to claims under § 1983 that are based on the petitioning of public authorities"); *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (citations omitted).

## C. Nevada's Anti-SLAPP Statute

With regard to Plaintiff's state law claims, Delfin's motion is governed by Nevada's anti-SLAPP statute, Nevada Revised Statute § 41.635, *et. seq*. This statute provides that "[a] person who engages in a good faith communication in furtherance of the right to petition is immune from civil liability for claims based upon the communication." Nev. Rev. Stat. § 41.650. In such a case, the defendant may file a special motion to dismiss within sixty days after service of such a complaint. Nev. Rev. Stat. § 41.660. The Ninth Circuit has held that "defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims[.]" *Verizon Delaware, Inc. v. Covad Comm. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109-10 (9th Cir. 2003); *United States ex. rel.*

4

1 | *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999).

2       A good faith communication in furtherance of the right to petition includes any

3 "[w]ritten or oral statement made in direct connection with an issue under consideration by

4 a legislative, executive or judicial body, or any other official proceeding authorized by law,

5 which is truthful or is made without knowledge of its falsehood." Nev. Rev. Stat. § 41.637(3).

6 The Nevada Supreme Court has expressly held that these provisions apply to cases, like

7 Plaintiff's, where the conduct in question related to an investigation of alleged wrongful action

8 on the part of a school district employee and ultimately led to disciplinary action. *See John v.*

9 *Douglas County School Dist.*, 219 P.3d 1276, (Nev. 2009). It characterized SLAPP lawsuits

10 as "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."

11 *Id.* at 1280 (internal quotation marks and citations omitted). The purpose of a special motion

12 to dismiss a SLAPP lawsuit, like the *Noerr Pennington* doctrine, is to filter out "unmeritorious

13 claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right

14 to free speech under both the Nevada and Federal Constitutions." *See id.* at 1281-82.

15       The special motion to dismiss is treated as a motion for summary judgment and is an

16 adjudication on the merits. Nev. Rev. Stat. § 41.660(3)(a). The moving party bears the initial

17 burden of production and persuasion. *Id.* This requires the moving party to make a threshold

18 showing that it made good faith communications in furtherance of the right to petition the

19 government. *Id.* If this showing is satisfied, the burden of production shifts to the nonmoving

20 party to demonstrate a genuine issue of material fact. *Id.* Summary judgment is only

21 appropriate if there is no genuine issue of material fact and the moving party is entitled to

22 judgment as a matter of law. *See John*, 219 P.3d at 1281. If Plaintiff cannot affirmatively

23 demonstrate a probability of success on each element of each of the challenged claims, his

24 claims must be dismissed. *Id.* at 1282.

25 **D. Summary Judgment Standard**

26       To the extent Delfin argues that Plaintiff's state law claims should be dismissed under

27 Nevada's anti-SLAPP statute, the court must treat the motion as one for summary judgment

28

1   and apply the standard set forth under Federal Rule of Civil Procedure 56. "The purpose of

2   summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before

3   the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

4   1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party.

5   *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477

6   U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and

7   disclosure materials on file, and any affidavits show that there is no genuine issue as to any

8   material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting

9   Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue,

10  however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

11       The moving party bears the burden of informing the court of the basis for its motion,

12  together with evidence demonstrating the absence of any genuine issue of material fact.

13  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

14  in an inadmissible form, only evidence which might be admissible at trial may be considered

15  by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

16       In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

17  determining whether a fact is material; (2) determining whether there is a genuine issue for the

18  trier of fact, as determined by the documents submitted to the court; and (3) considering that

19  evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As

20  to materiality, only disputes over facts that might affect the outcome of the suit under the

21  governing law will properly preclude the entry of summary judgment; factual disputes which

22  are irrelevant or unnecessary will not be considered. *Id.* at 248.

23       In determining summary judgment, a court applies a burden shifting analysis. "When

24  the party moving for summary judgment would bear the burden of proof at trial, 'it must come

25  forward with evidence which would entitle it to a directed verdict if the evidence went

26  uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of

27  establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*

28

6

1  *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal

2  citations omitted). In contrast, when the nonmoving party bears the burden of proving the

3  claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

4  to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

5  nonmoving party failed to make a showing sufficient to establish an element essential to that

6  party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at

7  323-25. If the moving party fails to meet its initial burden, summary judgment must be denied

8  and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*

9  *Co.*, 398 U.S. 144, 160 (1970).

10     If the moving party satisfies its initial burden, the burden shifts to the opposing party

11  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

12  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

13  the opposing party need not establish a material issue of fact conclusively in its favor. It is

14  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

15  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

16  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

17  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

18  that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

19  and allegations of the pleadings and set forth specific facts by producing competent evidence

20  that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

21     At summary judgment, a court's function is not to weigh the evidence and determine the

22  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

23  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

24  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

25  significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

26  omitted).

27  ///

28

7

# III. DISCUSSION

## A. Preliminary Matters

### 1. Posture of Delfin's Motion and Consideration of Documents Outside the Pleadings

Plaintiff raises a question about the posture of Delfin's motion insofar as it contemplates that the court will consider evidence outside of the pleadings and the legal standards that will be applied to Plaintiff's claims. (Doc. # 39 at 2.)

First, insofar as Plaintiff's federal law claims are concerned, Delfin's motion seeks dismissal of those claims under the *Noerr-Pennington* doctrine. (*See* Doc. # 38 at 18-21.) Therefore, the court will analyze those claims under the applicable motion to dismiss standard, and in so doing is constrained to the allegations contained within the Complaint.

Next, Delfin argues that Plaintiff's claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The court's analysis of Plaintiff's claims in this context is limited to the contents of the pleadings.

Finally, Delfin argues that Plaintiff's state law claims fail under Nevada's anti-SLAPP statute, which provides that a special motion to dismiss is to be treated as a motion for summary judgment.

Delfin titled his motion as a motion to dismiss. Federal Rule of Civil Procedure 12(d) allows a court to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment if a party relies on matters outside the pleadings; however, the parties must be given a reasonable opportunity to present all materials pertinent to the motion. Fed. R. Civ. P. 12(d); *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985). While it would have been helpful if Delfin had titled his motion as one for dismissal and/or summary judgment, the court finds that Delfin's motion clearly seeks to have the court apply both summary judgment and Rule 12(b)(6) standards. Delfin specifically points out that a special motion to dismiss under Nevada's anti-SLAPP statute is treated as a motion for summary judgment, and that Delfin intended to treat it as such. (Doc. # 38 at 10:20-22, 11:3-5, 12:2-16,

12:19-22, 13-15.) Plaintiff unmistakably recognized that Delfin was submitting documentation outside of the pleadings for the court's consideration (*see* Doc. # 39 at 2); therefore, he was on notice that the court could elect to treat the motion, at least in part, as one for summary judgment. Plaintiff does not assert that he was not given a reasonable opportunity to present materials pertinent to the motion. Nor did he request additional time to oppose the motion or to conduct discovery to oppose the motion. Accordingly, the court finds that Plaintiff had constructive notice that Delfin's motion may be converted into one for summary judgment and that the court could consider documents outside of the pleadings in that respect.

While Nevada's anti-SLAPP statute is clear that a special motion to dismiss brought under its provisions is to be treated as a motion for summary judgment, the Ninth Circuit has confirmed that "defendants sued in federal courts can bring anti-SLAPP motions to strike state law claims," but "[p]rocedural state laws are not used in federal court if to do so would result in a direct collision with a Federal Rule of Civil Procedure." *Verizon Delaware, Inc. v. Covad Comm. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (internal quotation marks and citations omitted). Thus, the Ninth Circuit has "refused to apply certain discovery-limiting provisions of [an] anti-SLAPP statute because they would conflict with Fed. R. Civ. P. 56." *Id.*

Nevada's anti-SLAPP statute provides for a stay of discovery pending a ruling by the court on the motion. *See* Nev. Rev. Stat. § 41.660(e)(b). This seemingly collides with Federal Rule of Civil Procedure 56(d), which states that a court may defer consideration or deny a motion for summary judgment if the opposing party demonstrates that it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 946 (9th Cir. 2001). However, Rule 56(d) requires that the opposing party demonstrate by "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). While Plaintiff alludes to Delfin's noncompliance with Rule 56, he does *not* provide a declaration or otherwise request that he be afforded an opportunity to conduct discovery in order to oppose Delfin's motion with his supporting declaration. (Doc. # 39.) Therefore, the court finds that it may properly consider

9

1  Delfin's motion to dismiss Plaintiff's state law claims pursuant to Nevada's anti-SLAPP statute

2  as a motion for summary judgment.

### 2. Plaintiff's Evidentiary Objections

4  Plaintiff asserts that "many" exhibits submitted by Delfin contain inadmissible hearsay

5  or are inadmissible for other reasons. (Doc. # 39 at 2.) Federal Rule of Civil Procedure 56(c)

6  provides: "[a] party may object that the material cited to support or dispute a fact cannot be

7  presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Once an

8  objection is made, "[t]he burden is on the proponent to show that the material is admissible

9  as presented or to explain the admissible form that is anticipated." *See* Fed. R. Civ. P.

10  56(c)(2) advisory committee note to 2010 amendments; *see also Fraser v. Goodale*, 342 F.3d

11  1032, 1036-37 (9th Cir. 2003) (internal quotations and citation omitted) ("a party does not

12  necessarily have to produce evidence in a form that would be admissible at trial, as long as the

13  party satisfies the requirements of Federal Rules of Civil Procedure 56" and "[e]ven if the non-

14  moving party's evidence is presented in a form that is currently inadmissible, such evidence

15  may be evaluated on a motion for summary judgment so long as the [ ] objections could be

16  cured at trial"). While Plaintiff generally asserts that proffered exhibits contain hearsay or are

17  inadmissible, he does not assert a specific objection to a particular exhibit. The court will not

18  engage in an exercise of postulating how each of Delfin's exhibits is objectionable. To the

19  extent Plaintiff attempts to assert a specific objection in footnote 2 of his opposition (Doc. #

20  39 at 9 n. 2), the court has not relied on Delfin's reference to Plaintiff's nolo contendere plea

21  in its analysis. Nor has the court relied on truth of the matters asserted in the hearing officer's

22  findings and recommendations in assessing Plaintiff's claims.

23  In addition, Plaintiff argues that none of Delfin's exhibits are authenticated. (Doc. # 39

24  at 2.) In response, Delfin argues that authentication is not necessary and cites a Tenth Circuit

25  case to support his argument (*see* Doc. # 41 at 3, citing *Law Co., Inc. v. Mohawk Const., and*

26  *Supply Co., Inc.*, 577 F.3d 1164, 1171 (10th Cir. 2009)); however, this is not the law in the Ninth

27  Circuit. Instead, the Ninth Circuit requires that documents submitted in support of a motion

28

1   for summary judgment be authenticated through a declaration made on personal knowledge.

2   *See Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007); *Orr v. Bank of America*, 285 F.3d

3   764, 773 (9th Cir. 2002) (citations omitted) ("Authentication is a condition precedent to

4   admissibility" and "unauthenticated documents cannot be considered in a motion for summary

5   judgment"). Under Federal Rule of Evidence 901, authentication requires the production of

6   "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.

7   R. Evid. 901(a).

8          Delfin also argues that the documents can be authenticated because they were produced

9   by Delfin or Plaintiff in connection with their initial disclosures. (Doc. # 41 at 2-3.) Delfin is

10  correct that the Ninth Circuit has found that documents produced by a party in discovery were

11  authentic, but authentication under this method is limited to circumstances when the

12  document is produced by the party-opponent. *See Maljack Prods., Inc. v. Good Times Home*

13  *Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir. 1996). Delfin has identified Exhibits 5, 7, 9, 10,

14  11, 12, 14, and 15 as having been produced by himself in discovery. (*See* Doc. # 41 at 3.) He

15  asserts that Exhibits 2, 3, 4, 6, and 13 were produced by Plaintiff in discovery. (*Id.*)

16              **a. Exhibits 2, 3, 4, 6, and 13**

17         Exhibits 2, 3, 4, 6, and 13, having been produced by Plaintiff, are deemed authenticated.

18              **b. Exhibits 5, 7, 9, 10, 11, 12, 14, and 15**

19         The discovery-authentication rule applies only to documents offered by the party

20  opponent, and not to documents produced by Delfin himself. *See Orr*, 284 F.3d at 777 n. 20.

21  Therefore, the court finds that Exhibits 5, 7, 9, 10, 11, 12, 14 and 15 have not been authenticated

22  merely because of their production during discovery. Nor have these documents been

23  authenticated by personal knowledge.

24         Federal Rule of Evidence 901(b)(4) provides that "documents...could be authenticated

25  by review of their contents if they appear to be sufficiently genuine." *Orr*, 285 F.3d at 778 n.

26  24 (courts have authenticated letters "by the linkage between the dates of postmarks and

27  defendant's location on the days [the] letters [were] mailed"); *see also Las Vegas Sands, LLC*

28

1   v.  *Nehme*, 632 F.3d 526, 533-34 (9th Cir.  2011) (finding that review of letter could be

2   authenticated because it appeared sufficiently genuine).

3          The court will now determine whether Exhibits 5, 7, 9, 10, 11, 12, 14, and 15 can be

4   authenticated pursuant to Federal Rule of Evidence 901(b)(4).  A review of the contents of

5   these exhibits demonstrates that they appear to be what Delfin purports them to be.  Moreover,

6   while Plaintiff attacks the exhibits as having not been authenticated, he provides no argument

7   to actually dispute their authenticity. Indeed, the majority of these exhibits are correspondence

8   sent to Plaintiff which reflects the facts alleged in Plaintiff's Complaint. If Plaintiff seriously

9   disputed the authenticity of these exhibits, he should have made a specific objection as to the

10  authenticity of a certain exhibit, instead of a general objection that none of the exhibits were

11  authenticated. As set forth below, the court overrules Plaintiff's objection for lack of

12  authenticity.

13         Exhibit 5 is a November 16, 2009  letter from Delfin to Plaintiff requesting a meeting

14  on November 17, 2009. (Doc. # 38-1.) The letter appears to have been signed by Delfin as well

15  as by Plaintiff. (*Id*.) The letter also reflects the facts as alleged in Plaintiff's Complaint.

16  (*See* Doc. # 2 at 4 ¶¶ 15-16 (alleging that Plaintiff was summoned to a meeting with Delfin on

17  November 17, 2009).) The court finds that the contents of this letter reveal that it is sufficiently

18  genuine.

19         Exhibit 7 is a letter dated November 24, 2009, from Delfin to Plaintiff, indicating that

20  Plaintiff had recommended Plaintiff's termination as a result of the utility knife incident. (Doc.

21  # 38-2 at 9-12.)  The underlying facts are alleged in Plaintiff's Complaint, and the contents of

22  the letter make it clear that the letter is sufficiently genuine.

23         Exhibit 9 is Carson City School District's policy regarding harassment and intimidation.

24  (Doc. # 38-2 at 17-19.)  The policy indicates that it was adopted on January 14, 1992, and was

25  revised as recently as November 28, 2006.  The court has no reason to doubt its authenticity.

26         Exhibit 10 is the Carson City School District's Statement of Ethics. (Doc. # 38-2 at 21-

27  22.)  Like Exhibit 9, the court has no reason to doubt its authenticity.

28

1    Exhibit 11 is a November 25, 2009 letter from an attorney for the Nevada State

2 Education Association to Superintendent Stokes regarding the recommendation for Plaintiff's

3 termination and Plaintiff's request for a hearing. (Doc. # 38-3 at 2.) Plaintiff is listed as being

4 copied on the letter. (*Id.*). The contents and dates of the letter reveal that it is clearly related

5 to Plaintiff's employment and the recommendation for termination as a result of the utility

6 knife incident. Accordingly, the court finds that it is sufficiently genuine.

7    Exhibit 12 is a November 25, 2009 letter from Superintendent Stokes to Plaintiff

8 regarding the recommendation for termination. (Doc. # 38-3 at 4-5.) Exhibit 14 is an April 27,

9 2010 letter from Superintendent Stokes to Plaintiff regarding a notice of non-renewal of his

10 employment. (Doc. # 38-3 at 10-11.) Again, the contents and dates of the letters reveal that

11 they are sufficiently genuine.

12    Exhibit 15 is the administrative hearing officer's findings and recommendations related

13 to Plaintiff's termination as a result of the utility knife incident. (Doc. # 38-3 at 14-37.) A

14 review of the contents of the findings and recommendations reveal that this document is

15 sufficiently genuine.

16                    **c. Exhibits 1, 8, 16, 17, and 18**

17    Delfin asserts that Exhibit 1, Plaintiff's Complaint; Exhibit 8, Nevada Revised Statute

18 391.312; Exhibit 16, SB 405; Exhibit 17, AB 485; and Exhibit 18, *John v. Douglas County*

19 *School Dist.* opinion, are self authenticating pursuant to Federal Rule of Evidence 901(b)(7).

20 (Doc. # 41 at 3.) The Federal Rule of Evidence governing self authentication is Rule 902. Fed.

21 R. Evid. 902.

22    There is no need to authenticate Exhibit 1, Plaintiff's Complaint, as the court can plainly

23 determine that it is a genuine copy of the Complaint filed by Plaintiff as reflected in the court's

24 docket. Likewise, the court finds that there was no need to authenticate the Nevada Supreme

25 Court opinion set forth in Exhibit 18 as the court may determine it is genuine by referencing

26 the citation and accessing the case via the official reporter.

27    With respect to Exhibits 8, 16 and 17, the court finds these exhibits are self

28

13

1   authenticating under Federal Rule of Evidence 902(5).

2        **d. Exhibit 19**

3        Finally, the court finds that Delfin's affidavit, Exhibit 19, is based on his personal

4   knowledge and is authenticated. (*Id.*)

5   **B. Plaintiff's Federal Claims**

6        **1. Motion to Dismiss under Rule 12(b)(6)**

7        Delfin argues that Plaintiff's federal claims should be dismissed under Rule 12(b)(6) for

8   failure to state a claim upon which relief may be granted.

9            **a. Fourth Amendment**

10       Plaintiff alleges that his Fourth Amendment right to be free from an unreasonable

11  seizure was violated in connection with his arrest on November 17, 2009. (Doc. # 2 at 5-6.)

12       The Fourth Amendment provides, "[t]he right of the people to be secure in their persons,

13  houses, papers, and effects, against unreasonable searches and seizures, shall not be

14  violated[.]" U.S. Const., amend. IV. A claim is sufficiently stated as a violation of the Fourth

15  Amendment's prohibition against unreasonable search and seizure if the allegation is that the

16  arrest was without probable cause or other justification. *See Forster v. County of Santa*

17  *Barbara*, 896 F.2d 1146, 1147-48 (9th Cir. 1990) (citation omitted).

18       Notably, Plaintiff does not allege that *Delfin* arrested him on November 17, 2009.

19  Instead, Plaintiff alleges that he was summoned to a meeting on November 17, 2009, by Delfin,

20  and at the meeting, Delfin informed Plaintiff that he (Delfin) had been informed that Plaintiff

21  had made a disturbing comment upon leaving the November 5, 2009 meeting. (Doc. # 2 ¶¶ 15-

22  16.) Delfin then asked Plaintiff whether he carried a knife, which Plaintiff confirmed. (*Id.* ¶

23  16.) Delfin asked Plaintiff to see the knife, and Plaintiff produced it to Delfin. (*Id.*) Plaintiff goes

24  on to allege that he was subsequently placed under arrest by defendant *Davis*. (*Id.* ¶ 17.)

25       From these allegations, it is entirely implausible that Delfin could have violated

26  Plaintiff's Fourth Amendment right in connection with the arrest. Plaintiff has not included

27  *any* facts that support his conclusion that Delfin violated his Fourth Amendment right to be

28

1  free from unreasonable seizure. Nor is it plausible that Delfin would have had anything to do

2  with any probable cause determination made in connection with Plaintiff's arrest. Instead,

3  Plaintiff's factual allegations regarding the lack of probable cause are centered on defendant

4  *Davis*, the arresting officer. Accordingly, Plaintiff's Fourth Amendment claim, and

5  accompanying request for attorney's fees under 42 U.S.C. § 1988 are dismissed. Because it is

6  clear that Plaintiff cannot cure the deficiencies of the Fourth Amendment claim as to Delfin,

7  the dismissal is without leave to amend. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir.

8  2011) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)).

9  ### b. Fourth Amendment Conspiracy

10  To prevail on a claim for conspiracy to violate one's constitutional rights under 42 U.S.C.

11  § 1983, the plaintiff must allege specific facts to support the existence of the claimed

12  conspiracy. *Karim-Panahi* v. *Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). The

13  elements of a conspiracy claim brought under section 1983 are: (1) an agreement or meeting

14  of the minds to violate constitutional rights, and (2) an actual deprivation of those rights

15  resulting from the alleged conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *see*

16  *also Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). "To be liable, each participant in the

17  conspiracy need not know the exact details of the plan, but each participant must at least share

18  the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (internal quotation marks

19  and citation omitted). Conclusory allegations that defendants conspired "do not support a

20  claim for violation of [plaintiff's] constitutional rights under § 1983." *Woodrum v. Woodward*

21  *County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

22  With respect to the Fourth Amendment conspiracy claim, Plaintiff's Complaint alleges:

23  25. The Defendants, and each of them, acting under color of law entered into an
    agreement to violate HAACK's rights under the Fourth Amendment to the United

24  States Constitution.
    26. The Defendants, and each of them, acting under color of law committed an

25  overt act in furtherance of such agreement.
    27. As a direct and legal result of the foregoing, HAACK has sustained the

26  damages described above.
    (Doc. # 2 at 6.)

27

28  Plaintiff's Complaint offers only legal conclusions devoid of factual support. Neither the

15

1    Complaint's general statement of facts nor the second claim for relief which alleges conspiracy

2    provide *any* factual evidence that an agreement was established or even contemplated between

3    Delfin and Davis.  Plaintiff has failed to include factual details regarding when an agreement

4    might have been made, what the substance of the agreement might have been, or what precise

5    overt act was taken in furtherance of the agreement.  Instead, the allegations of Plaintiff's

6    Complaint are more akin to the "threadbare recitals of the elements of a cause of action"

7    prohibited under *Iqbal*.

8        It appears that Plaintiff has attempted to cure the deficiency in his Complaint by

9    proffering the "expert" testimony of Ron Martinelli, who concludes that "Defendants Jose

10   Delfin and Deputy Scott Davis conspired to violate the constitutional rights of Plaintiff Wayne

11   Haack." (Doc. # 28 at 8:7-9.) It is not clear from Plaintiff's opposition how Mr. Martinelli

12   qualifies as an expert.  Moreover, Plaintiff's opposition does not explain from what **facts** Mr.

13   Martinelli draws his conclusions.  Thus, Mr. Martinelli's "opinion" suffers from the same

14   deficiencies as does Plaintiff's complaint, *i.e.*, it is not based on any concrete set of facts.  In

15   addition, Mr. Martinelli's "opinion" is problematic because whether an agreement was reached

16   or not likely comes within the province of the fact-finder, assuming there was a factual dispute,

17   and not an expert.

18       Accordingly, Plaintiff's Fourth Amendment conspiracy claim is dismissed as to Delfin

19   for failure to state a claim upon which relief may be granted.  It is not certain at this juncture

20   that Plaintiff cannot cure the deficiencies with respect to this claim; therefore, leave to amend

21   is granted. *See Silva*, 658 F.3d at 1105.

22   **2. *Noerr-Pennington***

23       Delfin also argues that he is immunized from liability pursuant to the *Noerr-Pennington*

24   doctrine. (Doc. # 38 at 17- 21.) The court will address this argument with respect to the Fourth

25   Amendment conspiracy claim which has been dismissed with leave to amend. Plaintiff does not

26   argue that the *Noerr-Pennington* doctrine does not apply under these circumstances; instead,

27   he contends that the doctrine's "sham" exception precludes a finding of immunity. (Doc. # 39

28

1   at 8-9.)

2        The Ninth Circuit has found that the *Noerr-Pennington* doctrine applies to citizen

3   communications with police. *See Forro Precision, Inc. v. Int'l. Bus. Machines Corp.*, 673 F.2d

4   1045, 1060 (9th Cir. 1982).

5        The "sham" exception to the *Noerr-Pennington* doctrine has been described in the

6   antitrust context as:

7        [E]ncompass[ing] situations in which persons use the governmental process-as
     opposed to the outcome of that process-as an anticompetitive weapon. A classic
8        example is the filing of frivolous objections to the license application of a
     competitor, with no expectation of achieving denial of the license but simply in
9        order to impose expense and delay. A "sham" situation involves a defendant
     whose activities are not genuinely aimed at procuring a favorable government
10       action at all, not one who genuinely seeks to achieve his governmental result, but
     does so through improper means.

11  *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991); *see also*

12  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) ("[a] sham exception to

13  the doctrine developed to prevent the immunization of conduct that used 'governmental

14  process...as an anticompetitive weapon'"); *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056,

15  1060 (9th Cir. 1998) (quoting *Omni*). "[T]he scope of the sham exception depends on the type

16  of governmental entity involved." *Kottle*, 146 F.3d at 1060 (citations omitted).

17       In *Forro*, the court found that the "sham" exception may apply in the context of citizen

18  communications with police if the defendant "provided the police with deliberately false

19  information, solely for the purpose of harassing [the plaintiff] or of achieving other ends

20  unrelated to law enforcement." *Forro*, 673 F.2d at 1060.

21       Because Delfin has raised the challenge to Plaintiff's federal law claims in the context

22  of a motion to dismiss, the court must assume the truth of Plaintiff's allegations. *See Kearney*,

23  590 F.3d at 646 ("[s]ince this matter arose on a motion to dismiss, Kearney's allegations must

24  be assumed true").

25       Plaintiff contends that the "sham" exception applies because he has alleged that Delfin

26  deliberately supplied the police with false information about Plaintiff having threatened his life,

27  and that Delfin conspired to have Plaintiff arrested at school in order to destroy him in the eyes

28

17

1  of the community. (*Id.*) A review of the allegations of Plaintiff's Complaint reveals that this
2  is not the case. Plaintiff alleges that a number of days after the utility knife incident, he was
3  summoned to a meeting with Delfin and others, and he later learned that defendant Davis was
4  present in an adjoining room. (Doc. # 2 ¶¶ 14-15.) During the meeting, Delfin told Plaintiff
5  that he had been informed that Plaintiff made a disturbing comment upon leaving the
6  November 5 meeting concerning his salary schedule, and this comment had been overheard
7  by Ms. Reedy. (*Id.* ¶ 16.) Plaintiff alleges that Delfin then asked him if he carried a knife, and
8  he responded affirmatively, and when asked to see it, Plaintiff handed it to Delfin. (*Id.*) After
9  Plaintiff handed the knife to Delfin, he alleges that defendant Davis entered the room and
10 placed Plaintiff under arrest. (*Id.*) Plaintiff asserts that "[t]he Defendants, and each of them,
11 acting under color of law committed an overt act in furtherance of such agreement." (*Id.* at
12 6.)

13       This is the extent of the allegations concerning a conspiracy to violate Plaintiff's Fourth
14 Amendment rights. This is a far cry from what Plaintiff *argues* he is alleging in his opposition,
15 i.e., that Delfin deliberately supplied the police with false information about Plaintiff
16 threatening his life. The facts alleged do not demonstrate the applicability of the "sham"
17 exception.

18       Accordingly, Delfin's motion to dismiss the federal conspiracy claim (and accompanying
19 request for attorney's fees) asserted against him under the *Noerr-Pennington* doctrine is
20 granted. Leave to amend should be granted unless the court determines "the pleading could
21 not possibly be cured by the allegation of other facts." *Silva v. Di Vittorio*, 658 F.3d 1090, 1105
22 (9th Cir. 2011) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). It
23 is not clear that Plaintiff could not *possibly* cure the deficiencies in his Complaint through the
24 allegation of other facts. Therefore, in amending his Fourth Amendment conspiracy claim
25 which has been deemed deficient under Rule 12(b)(6), Plaintiff must also address the
26 deficiencies with respect to the *Noerr-Pennington* "sham" exception.

27 ///

28
                                                18

**C.  Plaintiff's State Law Claims**

The court will now address the state law intentional infliction of emotional distress and negligence claims asserted against Delfin.

As indicated above, Delfin is required to make a showing that he made good faith communications in furtherance of his right to petition the government. Nev. Rev. Stat. § 41.660(3)(a). If he does so, Plaintiff must demonstrate a probability of success on each element of the challenged claims, and Delfin is entitled to summary judgment unless Plaintiff can demonstrate the existence of a genuine dispute as to a material fact. *Id.*

The court finds that Delfin has sufficiently established that he made good faith communications in furtherance of his right to petition the government. He provided an affidavit stating that he conducted a meeting with Plaintiff on November 5, 2009, concerning Plaintiff's request for a higher placement on the school district's salary schedule. (Doc. # 38-4 at 29 ¶¶ 3-4.) Plaintiff's request was denied. (*Id.* ¶ 4.) The next morning, Delfin was contacted by his administrative assistant, Ms. Reedy, who told him that when Plaintiff left the November 5, 2009 meeting, he removed a large utility knife from his pocket, opened the blade, and stated, "For the amount of money I won't be getting I could hire a hit man." (*Id.* ¶¶ 5-7.) Delfin subsequently initiated an investigation, which included having Ms. Reedy fill out a witness statement and contacting the Carson City Sheriff's Department. (*Id.* at 20 ¶ 9.) On November 16, 2009, Delfin gave Plaintiff written notice that he wanted to meet with him on November 17, 2009. (*Id.* ¶ 10.) Plaintiff appeared for the meeting on November 17, 2009, and as a precaution and out of concern for the safety of school district personnel, he requested that Deputy Sheriff Davis be present in an adjoining room. (*Id.* ¶ 11.) When he was asked about making the statement above in connection with the utility knife incident, Plaintiff denied he made that statement, but admitted he said something along the lines of, "I was tempted to use it, but I didn't." (*Id.* ¶ 12.) When Delfin asked Plaintiff if he carried a knife, he admitted to doing so, and produced the knife to Delfin. (*Id.*) Davis then entered the room and placed Plaintiff under arrest. (*Id.* ¶ 13.) Delfin subsequently notified Plaintiff that he was

19

1   recommending his employment be terminated. (*Id.* ¶14.) Plaintiff requested a hearing, which

2   was held on March 25, 2010, and the recommendation for termination was upheld. (*Id.* ¶¶15-

3   16.) Delfin specifically states that all of his communications and conduct described were true,

4   and he had no reason to believe they were false. (*Id.* ¶ 17.)

5          This shifts the burden to Plaintiff to demonstrate a probability of success on each

6   element of the challenged claims, and show that a genuine issue of material fact exists so as to

7   preclude summary judgment.

8          **1. Intentional Infliction of Emotional Distress**

9          Plaintiff alleges that Defendants engaged in extreme and outrageous conduct toward

10   Plaintiff with the intention of, or reckless disregard for causing him emotional distress, and he

11   in fact suffered such emotional distress. (Doc. # 2 at 8.)

12          Delfin argues that his conduct of investigating the utility knife incident which resulted

13   in Plaintiff's termination does not amount to extreme and outrageous conduct in connection

14   with Plaintiff's intentional infliction of emotional distress claim. (Doc. # 38 at 13-14.)

15          In Nevada, a claim for intentional infliction of emotional distress requires the Plaintiff

16   demonstrate the following elements: "(1) extreme and outrageous conduct with either the

17   intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having

18   suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard*

19   *Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (1999) (quoting *Star v. Rabello*, 625 P.2d

20   90, 92 (1981)). "[E]xtreme and outrageous conduct is that which is outside all possible bounds

21   of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency*

22   *Rent-A-Car*, 953 P.2d 24, 26 (1998) (internal quotation marks and citation omitted).

23   "[P]ersons must necessarily be expected and required to be hardened...to occasional acts that

24   are definitely inconsiderate and unkind." *Id.* (internal quotation marks and citation omitted).

25   "The Court determines whether the defendant's conduct may be regarded as extreme and

26   outrageous as to permit recovery, but, where reasonable people may differ, the jury determines

27   whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai*

28

1  *v. Lazaro*, 614 F.Supp.2d 1103, 1121 (D. Nev. 2009) (citing *Norman v. Gen. Motors Corp.*,

2  628 F.Supp. 702, 704-05 (D. Nev. 1986)).

3       The court finds Delfin is entitled to summary judgment on this claim. The undisputed

4  facts are that Delfin was apprised that Plaintiff brandished a utility knife after a meeting with

5  Delfin in which he was denied his request to be placed higher on the school district's salary

6  scale; Delfin investigated the incident by having a meeting with Plaintiff wherein Plaintiff

7  admitted that he carried a knife; and Plaintiff was subsequently arrested.  While Plaintiff

8  presents his declaration stating that he suffered severe emotional trauma as a result of

9  Defendants' conduct (Doc. # 39 at 13), he does not supply any evidence to create a genuine

10 issue of material fact as to whether or not Delfin's conduct was extreme and outrageous.

11 Accordingly, Plaintiff's claim against Delfin for intentional infliction of emotional distress fails

12 as a matter of law.

13      **2. Negligence**

14      Plaintiff alleges that Defendants had a duty to exercise due care so as not to cause injury

15 to Plaintiff, and violated that duty by acting negligently, and as a result he suffered injuries and

16 damages. (Doc. # 2 at 8.)

17      Delfin argues that there is no evidence that he acted negligently in investigating the

18 utility knife incident which ultimately led to Plaintiff's termination. (Doc. # 38 at 14-17.)

19      In Nevada, a claim for negligence requires that a Plaintiff establish: (1) defendant owed

20 a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause

21 of the plaintiff's injuries; and (4) the plaintiff suffered damages. *See Scialabba v. Brandise*

22 *Construction Co.*, 921 P.2d 928, 930 (1996) (citation omitted).

23      The court finds that Plaintiff's negligence claim fails as a matter of law.  The evidence

24 before the court indicates that Delfin was presented with information that Plaintiff brandished

25 a knife to Ms. Reedy after he was unsuccessful in his request to Delfin that he be placed higher

26 on the school district's salary scale. Delfin investigated the incident. Plaintiff was given an

27 opportunity to respond to the investigation and admitted that he carried a knife and turned it

28

21

1   over to Delfin. Plaintiff was subsequently arrested.

2        Plaintiff has not stated what duty was allegedly owed to him by Delfin or presented any

3 evidence to support a breach of any such duty. Even assuming some duty was owed to Plaintiff,

4 the evidence before the court only allows the court to conclude that Delfin acted reasonably

5 under the circumstances.

6        In his opposition, Plaintiff appears to argue that he was really asserting a claim for

7 negligent infliction of emotional distress, and not just a claim for negligence. (*See* Doc. # 39

8 at 9.) Preliminarily, it is clear that Plaintiff has asserted claims for *intentional* infliction of

9 emotional distress and negligence. (*See* Doc. # 2 at 8.) Even if Plaintiff's Complaint is

10 construed as asserting a claim for negligent infliction of emotional distress, this claim fails as

11 a matter of law.

12        A claim for negligent infliction of emotional distress requires that a plaintiff prove: (1)

13 the defendant owed a duty of care to the plaintiff; (2) defendant breached that duty; (3) the

14 breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered serious

15 motional distress. *Olivero v. Lowe*, 995 P;.2d 1023, 1026 (2000) (citing *Shoen v. Amerco,*

16 *Inc.*, 896 P.2d 469, 477 (1995)). Since Plaintiff has not raised a genuine issue of material fact

17 with respect to his negligence claim, any negligent infliction of emotional distress claim must

18 likewise fail.

19                   **IV. CONCLUSION**

20     **IT IS HEREBY ORDERED** that defendant Delfin's Motion to Dismiss (Doc. # 38) is

21 **GRANTED IN PART AND DENIED IN PART**, as follows:

22     (1) Plaintiff's Fourth Amendment claim (and accompanying request for attorney's fees

23 under 42 U.S.C. § 1988) is **DISMISSED WITH PREJUDICE** as to defendant Delfin;

24     (2) Plaintiff's Fourth Amendment conspiracy claim (and accompanying request for

25 attorney's fees under 42 U.S.C. § 1988) is **DISMISSED WITH LEAVE TO AMEND** as to

26 defendant Delfin. If Plaintiff elects to amend his Complaint, he is instructed to address the

27 deficiencies under Federal Rule of Civil Procedure 12(b)(6) as well as those related to the

28

1   *Noerr-Pennington* doctrine's "sham" exception, as outlined above.  Plaintiff shall have **twenty-**

2   **one** days from the date of this order to file an amended complaint, if he so chooses.

3       (3) **<u>SUMMARY JUDGMENT</u>** is granted in favor of defendant Delfin as to Plaintiff's

4   state law claims for intentional infliction of emotional distress and negligence.

5   **IT IS SO ORDERED.**

6   DATED: August 22, 2012.

7

8

9

10                                  ROBERT A.  MCQUAID, JR.
                                    UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        23