```
┌─────────────────────────────────────────┐
│ ____ FILED          ____ RECEIVED        │
│ ____ ENTERED        ____ SERVED ON       │
│            COUNSEL/PARTIES OF RECORD     │
│   ┌───────────────────────────────┐     │
│   │                               │     │
│   │        SEP 1 0 2012           │     │
│   │                               │     │
│   └───────────────────────────────┘     │
│      CLERK US DISTRICT COURT             │
│        DISTRICT OF NEVADA                │
│ BY: _____ DEPUTY   │
└─────────────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WAYNE PHILLIP HAACK, | ) | 3:11-cv-00353-RAM |
|      Plaintiff, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
|      vs. | ) | |
| CITY OF CARSON CITY, et. al. | ) | |
|      Defendants. | ) | |

Before the court is defendants Carson City and Scott Davis's Motion for Summary Judgment. (Doc. # 44.)[1] Plaintiff Wayne Phillip Haack opposed (Doc. # 49) and Carson City and Davis replied (Doc. # 56).

## I. BACKGROUND

Plaintiff originally filed his Complaint in the First Judicial District Court for Carson City, and it was subsequently removed by Defendants. (*See* Pet. for Removal (Doc. # 1).) Defendants are Carson City, Scott Davis, and Jose Delfin. (*See* Pl.'s Compl. (Doc. # 2) at 2-3.) This motion is brought only on behalf of defendants Carson City and Scott Davis. Defendant Delfin recently brought a motion to dismiss which the court granted in part and denied in part. (*See* Delfin's Mot. to Dismiss (Doc. # 38) and Order (Doc. # 55).) The facts leading up to this action are by and large undisputed and are recounted below.

Plaintiff became employed as a probationary wood shop teacher at a school in Carson City, Nevada, on August 17, 2009. (Doc. # 2 ¶ 8.) He claims that it was his custom to carry a

---

[1] Refers to court's docket number.

1   pocket utility knife in order to trim his students' wood shop projects. (*Id.*) On November 5,

2   2009, Plaintiff attended a meeting with his former supervisor and Associate Superintendent

3   of the Carson City School District, Delfin, in an unsuccessful attempt to persuade Delfin to

4   place Plaintiff higher on the school district's salary schedule. (*Id.*   ¶¶ 9-10.) According to

5   Plaintiff, after the meeting he turned to Delfin's administrative assistant, Lily Reedy, took the

6   closed utility knife from his pocket and said, "I was tempted to use it, but I didn't." (*Id.* ¶ 11.)

7       Reedy's recollection was that when Plaintiff brandished the knife he said something

8   along the lines of, "for the amount of money that I didn't get, I could have hired a hit man."

9   (*See* Doc. # 44-1 (Ex. 7) at 39, trans. p. 32:7-10.) Regardless of the statement Plaintiff made,

10  the parties agree that Reedy became more concerned about the incident later, and decided to

11  report it to Delfin and the Superintendent of Schools, Richard Stokes, the following day. (Doc.

12  # 2 ¶¶ 12-13; Doc. # 44-1 (Ex. 7) at 40, trans. pp. 33-34.)

13      Delfin subsequently notified Davis about the incident.  Davis was a Carson City Sheriff's

14  Deputy assigned as a School Resource Officer. (Doc. # 44-1 (Ex. 8) at 46, trans. p. 55:4-24.)

15  In the course of his investigation, Davis obtained a statement from Reedy as well as from

16  Delfin. (*Id.* at 47-48, trans. p. 57:18-22, p. 58:12-16.) Davis also called Reedy during his

17  investigation to inquire as to her reaction and determine if Reedy felt there was a viable threat

18  on the part of Plaintiff. (*Id.* at 49, trans. p. 60:6-25.) Reedy was emotionally and physically

19  upset and told Davis that she could not sleep. (*Id.*)

20      Plaintiff was summoned to a meeting with Delfin and others on November 17, 2009, and

21  a discussion ensued about the utility knife incident. (Doc. # 2 ¶¶ 15-16.) Delfin asked Davis to

22  be present that day, but Delfin did not specify the purpose of the meeting or speak to Davis

23  prior to the commencement of the meeting about the possibility of arresting Plaintiff.  (Doc.

24  # 44-1 (Ex. 9) at 61-62, trans. pp. 124:1-15, 125:2-14.) When he arrived at the school on

25  November 17, 2009, Davis went into Vice Principal Karen Sims's office and waited. (Doc. # 44-

26  1 (Ex. 9) at trans. p. 63:3-10.)

27      During the meeting, Plaintiff was questioned about the utility knife and confirmed that

28

2

1   he carried it, and produced it to Delfin. (Doc. # 2 ¶¶ 15-16; Doc. # 44-1 at 64-66, trans. pp.

2   128:23-25, 129:1-3, 130:17-19.) Delfin subsequently entered Ms. Sims's office, carrying the

3   knife, advised Davis that Plaintiff admitted to making the statement, and asked that Plaintiff

4   be arrested. (Doc. # 44-1 (Ex. 9) at 64-66, trans. pp. 128:21-25, 129:1-3, 130:17-21.)

5       Plaintiff was subsequently placed under arrest by Davis for violating Nevada Revised

6   Statute 392.915, threatening or intimidating an employee of a school district, a gross

7   misdemeanor. (Doc. # 2 ¶¶ 17-18; Doc. # 44-1 at 65, trans. p. 129:1-5.) Davis then transported

8   Plaintiff approximately one and a half miles to the Carson City Jail, where he was turned over

9   to the jail deputies. (Doc. # 44-1 (Ex. 11) at 73, ¶ 5.)

10      Plaintiff was charged with a lesser offense, under Nevada Revised Statute 392.9103,

11   creating a disturbance in a school building. (Doc. # 44-1 (Ex. 13) at 78.) Plaintiff eventually

12   pled no contest to a lesser charge of disorderly conduct, a misdemeanor, in violation of Carson

13   City Municipal Code section 8.04.010. (*Id.*; Doc. # 44-1 (Ex. 1) at 8, p. 62:3-15.) In connection

14   with the plea agreement, Plaintiff was given a six month deferred sentence which included the

15   conditions that he obey all laws, that he have no complaints of disorderly conduct, that he have

16   no contact with Reedy or Delfin, and that he not engage in any violence or threats of violence.

17   (Doc. # 44-1 (Ex. 13) at 78-79.)

18      Plaintiff asserts the following federal claims against Carson City and Davis: (1) Davis

19   arrested Plaintiff on November 17, 2009, in violation of the Fourth Amendment; (2) Davis

20   conspired with Delfin to violate Plaintiff's Fourth Amendment rights; (3) Carson City failed to

21   properly train and supervise Davis concerning the manner in which warrantless arrests may

22   be made so as to subject Carson City to municipal liability under 42 U.S.C. § 1983. (Doc. # 2

23   at 5-7.) In addition, Plaintiff asserts the following state law claims against Carson City and

24   Davis: (1) false arrest and/or imprisonment as to Davis; (2) negligent hiring, retention and

25

26

27

28

3

1   supervision of Davis and Delfin by Carson City[2]; (3) intentional infliction of emotional distress[3];

2   and (4) negligence. (Doc. # 2 at 7-9.)

3        Carson City and Davis move for summary judgment, arguing: (1) Plaintiff's federal

4   claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiff's warrantless arrest

5   was supported by probable cause; (3) Davis is entitled to qualified immunity with respect to

6   Plaintiff's federal claims; (4) the failure to train, supervise and control claim against Carson

7   City fails because there was no underlying constitutional violation and there is no evidence to

8   support this claim; (5) Plaintiff's state law claims should be dismissed pursuant to the

9   governmental immunity set forth in Nevada Revised Statute 41.032(2); and (6) the state law

10  claims are not supported by the evidence. (Doc. # 44.)

11                              **II. LEGAL STANDARD**

12       "The purpose of summary judgment is to avoid unnecessary trials when there is no

13  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

14  18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in

15  favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing

16  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

17  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

18  there is no genuine issue as to any material fact and that the movant is entitled to judgment as

19  a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the

20  material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

21  at 250.

22       The moving party bears the burden of informing the court of the basis for its motion,

23  together with evidence demonstrating the absence of any genuine issue of material fact.

24  _____

25       [2] Plaintiff alleged negligent hiring, retention and supervision by Carson City as to Delfin, however, it is
    apparently undisputed that Delfin was an employee of the school district and not Carson City. Therefore, this

26  claim will not be construed as applying to Delfin.

27       [3]Plaintiff concedes that his claim for intentional infliction of emotional distress against Carson City and
    Davis may be dismissed. (*See* Doc. # 48 at 10.) Therefore, summary judgment shall enter in favor of Carson City

28  and Davis as to this claim.

1   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence
2   in an inadmissible form, only evidence which might be admissible at trial may be considered
3   by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

4       In evaluating the appropriateness of summary judgment, three steps are necessary: (1)
5   determining whether a fact is material; (2) determining whether there is a genuine issue for the
6   trier of fact, as determined by the documents submitted to the court; and (3) considering that
7   evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As
8   to materiality, only disputes over facts that might affect the outcome of the suit under the
9   governing law will properly preclude the entry of summary judgment; factual disputes which
10  are irrelevant or unnecessary will not be considered. *Id.* at 248.

11      In determining summary judgment, a court applies a burden shifting analysis. "When
12  the party moving for summary judgment would bear the burden of proof at trial, 'it must come
13  forward with evidence which would entitle it to a directed verdict if the evidence went
14  uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of
15  establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*
16  *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal
17  citations omitted). In contrast, when the nonmoving party bears the burden of proving the
18  claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence
19  to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the
20  nonmoving party failed to make a showing sufficient to establish an element essential to that
21  party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at
22  323-25. If the moving party fails to meet its initial burden, summary judgment must be denied
23  and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*
24  *Co.*, 398 U.S. 144, 160 (1970).

25      If the moving party satisfies its initial burden, the burden shifts to the opposing party
26  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*
27  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

28

1  the opposing party need not establish a material issue of fact conclusively in its favor. It is

2  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

3  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

4  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

5  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

6  that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

7  and allegations of the pleadings and set forth specific facts by producing competent evidence

8  that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

9        At summary judgment, a court's function is not to weigh the evidence and determine the

10  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

11  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

12  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

13  significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

14  omitted).

15  ### III. DISCUSSION

16  **A. PLAINTIFF'S FEDERAL CLAIMS AND *HECK V. HUMPHREY***

17        Carson City and Davis argue that Plaintiff's federal claims are barred pursuant to *Heck*

18  *v. Humphrey*, 512 U.S. 477 (1994). (Doc. # 44 at 9-13.)

19        In *Heck*, the Supreme Court held:

20  
21  
22  
23  
24  > [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 487.

25        The court "must consider whether a judgment in favor of the plaintiff would necessarily

26  imply the invalidity of his conviction or sentence; if it would, the complaint must be

27  dismissed[.]" *Id.* If, however, "the district court determines that the plaintiff's action, even if

28  

6

1   successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against

2   the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the

3   suit." *Id.* "*Heck*, in other words, says that if a criminal conviction arising out of the same facts

4   stands and is fundamentally inconsistent with the unlawful behavior for which section 1983

5   damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952

6   (9th Cir. 1996).

7         The Ninth Circuit has applied *Heck* in the context of alleged Fourth Amendment

8   violations. *See Szajer v. City of Los Angeles*, 632 F.3d 607, 611 (9th Cir. 2011), *cert. denied*,

9   132 S.Ct. 98 (Oct. 3, 2011); *Smithart*, 79 F.3d at 952 ("[t]here is no question that *Heck* bars

10  [a plaintiff's] claim that defendants lacked probable cause to arrest him and brought unfounded

11  criminal charges against him.").

12        Here, Plaintiff ultimately pled no contest to the lesser charge of disorderly conduct in

13  violation of Carson City Municipal Code section 8.04.010. (Doc. # 44-1 (Ex. 1) at 8, trans. p.

14  62:3-15.) A no contest plea has the same effect as a guilty plea or other conviction for purposes

15  of applying the *Heck* doctrine. *See Szajer*, 632 F.3d at 610, 612 (no contest plea to felony

16  weapons possession barred later civil action alleging illegal search); *see also Webb v. City and*

17  *County of San Francisco*, 2011 WL 615605, at *6 (N.D. Cal. Dec. 12, 2011) (finding that

18  *Heck* applied under circumstances where the plaintiff entered a no contest plea). Plaintiff does

19  not dispute this is the case. (*See* Doc. # 48 at 5:14-18 ("Haack is not contending that his no

20  contest plea distinguishes his case from *Heck*.").) Moreover, it is clear that under Nevada law,

21  a no contest plea is the equivalent of a guilty plea. *See State v. Lewis*, 178 P.3d 146, 147 (Nev.

22  2008). Plaintiff was advised of this fact during his criminal proceeding. (Doc. # 44-1 at 81;

23  Doc. # 45 (Notice of Manual Filing of Ex. 14).)

24        Plaintiff's conviction has not been overturned or otherwise invalidated. Therefore, the

25  dispositive question the court must answer is if Plaintiff prevails on his section 1983 claim,

26  would it necessarily imply the invalidity of his state court conviction.

27        Plaintiff argues that his contention that his arrest for a gross misdemeanor was

28

7

1    unconstitutional does not necessarily imply the invalidity of his ultimate conviction for
2    disorderly conduct, a misdemeanor charge. (Doc. # 48 at 3-4, 5-6.) Plaintiff reasons that the
3    basis for a proper warrantless arrest under Nevada law is probable cause that he committed a
4    felony or gross misdemeanor, and the assertion that his arrest for a gross misdemeanor was
5    unsupported by probable cause is not inconsistent with the misdemeanor conviction. (*Id.* at
6    4.) Plaintiff goes on to argue that the reduction of the charge from a gross misdemeanor to a
7    misdemeanor actually supports Plaintiff's claim that there was no probable cause for the gross
8    misdemeanor arrest. (*Id.*)

9         The court is not persuaded by Plaintiff's argument. Plaintiff cites no authority, in this
10   circuit or otherwise, in support of his argument. If the court went along with Plaintiff's
11   reasoning, whenever a criminal defendant enters into a plea agreement which results in the
12   entry of a plea to a lesser offense than that for which he or she was arrested, *Heck* would not
13   apply. The court agrees with Carson City and Davis that plea negotiations involve various
14   considerations which may have absolutely no relationship to whether there was probable cause
15   for the underlying arrest.

16        Moreover, the Ninth Circuit has characterized *Heck* as applying to those cases in which
17   "a criminal conviction *arising out of the same facts* stands and is fundamentally inconsistent
18   with the unlawful behavior for which section 1983 damages are sought[.]" *Smithart*, 79 F.3d
19   at 952. Plaintiff has not presented evidence that the facts underlying the gross misdemeanor
20   charge were different than the facts underlying the misdemeanor charge. In fact, the video of
21   the criminal proceeding where Plaintiff entered his plea reveals that the disorderly conduct
22   charge was based on the same set of facts as his arrest for the gross misdemeanor. (Doc. # 44-1
23   (Ex. 14), Doc. # 45 (Notice of Manual Filing of Ex. 14).)

24        The court finds that Plaintiff's no contest plea to the disorderly conduct charge, which
25   is based on the exact same set of facts as the gross misdemeanor arrest, *is* "fundamentally
26   inconsistent with the unlawful behavior for which the section 1983 damages are sought." If the
27   court were to find there was no probable cause to support Plaintiff's arrest for the gross
28

1    misdemeanor, it would imply there was no probable cause to charge him with the

2    misdemeanor, which would invalidate the misdemeanor charge. Therefore, the court finds that

3    if Plaintiff were to prevail on his federal claims, it would result in a finding that there was no

4    probable cause to support his arrest, which would necessarily imply the invalidity of his no

5    contest plea, which is the equivalent of a conviction in Nevada.

6        To the extent Plaintiff asserts a claim for conspiracy and a claim against Carson City

7    under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), such claims may not

8    be pursued in the absence of an underlying constitutional deprivation or injury. *See City of Los*

9    *Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d

10    950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no

11    municipal liability."); *Lacey v. Maricopa County*, 2012 WL 3711591, at *28 (9th Cir. Aug. 29,

12    2012) (citations omitted) ("there must always be an underlying constitutional violation" to

13    assert a conspiracy claim under section 1983).

14        Therefore, Plaintiff's claims for violation of the Fourth Amendment, conspiracy to

15    violate the Fourth Amendment, and that Carson City failed to properly train and supervise

16    Davis concerning the manner in which warrantless arrests may be made so as to subject Carson

17    City to municipal liability under 1983, are dismissed without prejudice. *See Trimble v. City*

18    *of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (dismissals pursuant to *Heck* must be without

19    prejudice to give the plaintiff the opportunity to re-file should he succeed in invalidating his

20    conviction or sentence).

21        With respect to Plaintiff's conspiracy claim, the court recently granted defendant Delfin's

22    motion to dismiss this claim with leave to amend. (*See* Doc. # 55.) Leave to amend was granted

23    with the assumption that Plaintiff still had a viable Fourth Amendment claim against defendant

24    Davis, that would form the underlying basis for the conspiracy claim. Because the court has

25    dismissed the Fourth Amendment claim as to defendant Davis as *Heck* barred, the court must

26    now also dismiss the conspiracy claim against defendant Delfin without prejudice. *See Lacey*,

27    2012 WL 3711591, at *28 ("there must always be an underlying constitutional violation" to

28

1   assert a conspiracy claim under section 1983).

2 **B. PLAINTIFF'S STATE LAW CLAIMS**

3      Plaintiff's remaining claims against Carson City and Davis are the state law claims of

4 false arrest and/or imprisonment; negligent hiring, retention and supervision; and negligence.

5      First, Carson City argues that these claims should be dismissed pursuant to the

6 discretionary immunity provided to government entities and their employees under Nevada

7 Revised Statute 41.032(2). (Doc. # 44 at 19-20.) Additionally, Carson City contends there is no

8 evidence to support these claims. (*Id.* at 21-23.)

9      In response, Plaintiff asserts that his state law claims are not barred by discretionary

10 immunity. (Doc. # 48 at 9.) He further asserts that triable issues of material fact exist as to

11 these claims. (*Id.* at 9-11.)

12      While Nevada has generally waived its immunity from liability in Nevada Revised

13 Statute 41.031, it has retained immunity as provided in Nevada Revised Statute 41.032 to

14 41.038, 485.318(3), and any other statute that expressly provides for government immunity.

15 Nev. Rev. Stat. 41.031(1).

16      Nevada Revised Statute 41.032(2) provides in pertinent part:

17      No action may be brought under NRS 41.031 or against an immune contractor
     or an officer or employee of the State or any of its agencies or political
18      subdivisions which is:
     ...
19      2. Based upon the exercise or performance of the failure to exercise or perform
     a discretionary function or duty on the part of the State or any of its agencies or
20      political subdivisions or of any officer, employee or immune contractor of any of
     these, whether or not the discretion involved is abused.
21 Nev. Rev. Stat. 41.032(2).

22      This district has expressly found that the Nevada Supreme Court "has implicitly

23 assumed that municipalities are political subdivisions of the State for the purposes of applying

24 the discretionary act immunity statute." *Sandoval v. Las Vegas Met. Police Dept.*, 2012 WL

25 607283, at *13 (D. Nev. Feb. 24, 2012) (citing *Travelers Hotel, Ltd. v. City of Reno*, 103 Nev.

26 343, 741 P.2d 1353, 1354-55 (1987)). In Nevada, discretionary-function immunity applies if a

27 decision: "(1) involves an element of individual judgment or choice and (2) is based on

28

considerations of social, economic, or political policy." *Id.* at *14 (citing *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720, 727, 729 (2007)). In addition, "[t]he discretionary function exception protects agency decisions concerning the scope and manner in which it conducts an investigation so long as the agency does not violate a mandatory directive." *Id.* (quoting *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000)).

In *Sandoval v. Las Vegas Metropolitan Police Department*, the court determined that the law enforcement officers were entitled to discretionary-function immunity in connection with effectuating an arrest. *See Sandoval*, 2012 WL 607283 at *14.

> In determining how to best enforce the law, law enforcement officers are required to consider their training, the need to arrest certain parties, the concern for their own safety, the concern for the arrestee's safety, the public's safety, the resources available to the officer, [police department] policies, and the information the officer has on hand.

*Id.* (citation omitted). "These factors indicate that the officers' decision to arrest Plaintiffs is 'fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate.'" *Id.* (citation omitted).

Here, as in *Sandoval*, the court finds that defendant Davis's decision to arrest Plaintiff involved an exercise of his judgment based on social and policy considerations. With no evidence that he violated a mandatory directive in connection with the arrest of Plaintiff, Davis and Carson City are entitled to discretionary-function immunity under Nevada Revised Statute 41.032(2) with respect to Plaintiff's state law tort claims.

///

///

///

///

///

///

///

///

///

11

## IV.  CONCLUSION

Davis and Carson City's Motion for Summary Judgment (Doc. # 44) is **GRANTED**, as follows:

(1) Plaintiff's federal claims, set forth in the Complaint as the First through Fourth claims for relief, are **DISMISSED WITHOUT PREJUDICE** pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and

(2) Summary judgment shall be entered in favor of Carson City and Davis as to Plaintiff's state law claims, set forth in the Complaint as the fifth through tenth claims for relief.

**IT IS SO ORDERED.**

**LET JUDGMENT ENTER ACCORDINGLY.**

DATED: September 10, 2012.

_____
ROBERT A.  MCQUAID, JR.
UNITED STATES MAGISTRATE JUDGE

12